**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
SHIVA STEIN,

        Plaintiff,

v.

LEAF GROUP LTD., DEBORAH A. BENTON, SEAN MORIARTY, JENNIFER SCHULZ, BEVERLY K. CARMICHAEL, ROB KROLIK, SUZANNE HOPGOOD, HAROLD LOGAN,

        Defendants.
---------------------------------------------------------

Civil Action No. a:21-cv-3693

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Leaf Group Ltd. ("Leaf Group or the "Company") and the members Leaf Group board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Leaf Group by Graham Holdings Company and its affiliates ("Graham").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 23, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Pacifica Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Graham, will merge with and into Leaf Group with Leaf Group surviving the merger and becoming a wholly owned subsidiary of Graham (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Leaf Group common share issued and outstanding will be converted into the right to receive $8.50 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Leaf Group stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Canaccord Genuity LLC ("Canaccord") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Leaf Group stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Furthermore, Leaf Group's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this district.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Leaf Group common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Deborah A. Benton has served as a member of the Board since 2019 and is the Chairman of the Board.

11. Individual Defendant Sean Moriarty has served as a member of the Board since 2014 and is the Company's Chief Executive Officer.

12. Individual Defendant Jennifer Schulz has served as a member of the Board since 2016.

13. Individual Defendant Beverly K. Carmichael has served as a member of the Board since 2018.

14. Individual Defendant Rob Krolik has served as a member of the Board since 2020.

15. Individual Defendant Suzanne Hopgood has served as a member of the Board since 2020.

16. Individual Defendant Harold Logan has served as a member of the Board since 2020.

17. Defendant Leaf Group is incorporated in Delaware and maintains its principal offices at 1655 26th Street, Santa Monica, California 90404. The Company's common stock trades on the New York Stock Exchange under the symbol "LEAF."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

20. Leaf Group, together with its subsidiaries, operates as a diversified consumer internet company worldwide. It operates in two segments, Marketplaces and Media. The Marketplaces segment offers Society6.com, which provides artists with an online commerce platform to feature and sell their original art and designs on consumer products in the wall art, home decor, and tech and apparel accessories categories. It also provides SaatchiArt.com and its related art fair event brand, which is an online art gallery where a global community of artists exhibit and sell their original artwork directly to consumers. The Media segment offers Well+Good, a health and wellness media brand that offers journalistic approach to content; and

Livestrong.com, a destination and action-oriented community, as well as mobile applications, such as MyPlate that monitor users' health, fitness, and life achievements. This segment also provides Hunker, a home design media site for enabling first-time homeowners enhance their homes with practical solutions, home tours, and design advice for people; and Only In Your State, a US-focused local attractions and review site, which highlights small businesses, hidden gems, and natural wonders for the audience. In addition, this segment offers content creation, traffic source, mobile application, and monetization services; and develops partner sites. It sells its products through wholesale channels to trade and hospitality clients, as well as through retail distribution partners. The Company was formerly known as Demand Media, Inc. and changed its name to Leaf Group Ltd. in November 2016. Leaf Group was incorporated in 2006 and is headquartered in Santa Monica, California.

21. On April 5, 2021, Leaf Group announced that it had entered into the Proposed Transaction:

> SANTA MONICA, Calif., April 05, 2021 (GLOBE NEWSWIRE) -- Leaf Group Ltd. (NYSE: LEAF) ("Leaf Group" or the "Company"), a diversified consumer internet company, today announced that it has entered into a definitive merger agreement with Graham Holdings Company (NYSE: GHC) ("Graham Holdings"), a diversified education and media company, under which Graham Holdings will acquire all of the outstanding shares of common stock of Leaf Group for $8.50 per share in an all-cash transaction valued at approximately $323 million.
>
> The price per share to be paid in the transaction, which was unanimously approved by the Leaf Group Board of Directors, represents a premium of approximately 21% to the closing price of Leaf Group common stock on April 1, 2021, the last trading day prior to the transaction announcement, and a premium of approximately 35% to the 90-day volume weighted average trading price of $6.30 per share.

On February 9, 2021, the Leaf Group Board of Directors received a written proposal from Graham Holdings to acquire Leaf Group for $8.50 per share in cash. Following the Leaf Group's receipt of Graham Holdings' offer, in order to maximize shareholder value, Moorgate Securities LLC, at the Board's direction, contacted ten additional financial and strategic buyers about their interest in acquiring Leaf Group. Six of these parties entered into confidentiality agreements with Leaf Group and conducted due diligence but no party submitted a competing offer. After an independent review of the alternatives available, including the value creation opportunity through continued execution of Leaf Group's strategic plan, the Leaf Group Board of Directors unanimously determined that the all-cash premium transaction with Graham Holdings for $8.50 per share in cash maximizes value for Leaf Group shareholders.

Deborah Benton, Chair of Leaf Group's Board of Directors, said, "Through this transaction, we are pleased to maximize value and deliver a significant, immediate cash premium to Leaf Group's shareholders. After thoroughly reviewing the strategic alternatives available to Leaf Group, the Board of Directors concluded that this all-cash premium transaction with Graham Holdings achieved the Board's long-term objective of fully recognizing the value of the business and delivers immediate and substantial cash value to our shareholders."

Sean Moriarty, Chief Executive Officer of Leaf Group, said, "We could not be more pleased to be joining forces with an organization with such a rich history and shared commitment to excellence. Together, we look forward to continuing to build on the strong momentum Leaf Group generated over the past year, with the additional resources and expertise of Graham Holdings helping us further grow the reach of our young brands and innovate for our customers, creators and audiences."

Timothy J. O'Shaughnessy, Chief Executive Officer of Graham Holdings, said, "At Graham Holdings, we look for businesses that can prosper under our ownership and Leaf Group's collection of marketplace and media brands make for a growing company that can do just that. We're thrilled to partner with Sean and his team and look forward to driving profitable growth at Leaf Group."

Following the transaction, it is anticipated that Sean Moriarty, Chief Executive Officer of Leaf Group, and other key members of Leaf Group's senior management team will continue in their roles. Upon

completion of the acquisition, Leaf Group will become a wholly-owned subsidiary of Graham Holdings.

**Approvals and Timing**

The transaction, which is expected to close in June or July of 2021, is subject to the approval of Leaf Group shareholders, customary regulatory requirements, and customary closing conditions. The transaction is not subject to a financing condition.

The Directors and executive officers of Leaf Group collectively holding approximately 2.1% of the outstanding shares of Leaf Group have entered into a voting agreement under which they have agreed to vote all of their Leaf Group shares in favor of the transaction.

**Advisors**

Moorgate Securities LLC and Canaccord Genuity are acting as financial advisors and Goodwin Procter LLP is acting as legal counsel to Leaf Group. Covington & Burling LLP is acting as legal counsel to Graham Holdings.

22. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Leaf Group' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

23. On April 23, 2021, Leaf Group filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Leaf Group Financial Projections*

24. The Proxy Statement fails to provide material information concerning financial projections by Leaf Group management and relied upon by Canaccord in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Leaf Group management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement fails to disclose the Company's projected net income or loss, despite the fact that projected Adjusted EBITDA was calculated using net income or loss. This omission renders the Projections portion of the Proxy Statement materially incomplete and misleading as to the valuation of Leaf Group.

26. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics **and/or** a

reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning Canaccord's Financial Analysis*

30. With respect to Canaccord's *Discounted Cash Flow Analysis*, the Proxy Statement also fails to disclose: (i) terminal values in the year ending December 31, 2025; (ii) the inputs and assumptions underlying the use of a terminal perpetual growth rate ranging from 2.0% to 3.5%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 12.5% to 14.0%; and (iv) the Company's estimated range of weighted average cost of capital.

31. With respect to Canaccord's *Premiums Paid Analysis*, the Proxy Statement also fails to disclose the premiums paid and the acquisitions observed by Canaccord in the analysis.

32. Finally, the Proxy Statement fails to disclose the details of the past relationship between Moorgate Securities LLC ("Moorgate"), one of the Company's financial services in connection with the Proposed Transaction, whether Moorgate provided services to the Company in the past two years, how much compensation it received for those services, and the reason the Company decided it was necessary to retain a separate financial advisor to help with the strategic process leading to the entry of the Merger Agreement, and the basis for the cash fee of $5,579.070, compared to $650,000 paid to Canaccord for Canaccord's services in connection with the Proposed Transaction.

33. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Canaccord and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

11

38. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

39. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of Leaf Group within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Leaf Group, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of Leaf Group, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Leaf Group, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 26, 2021                              **MELWANI & CHAN LLP**

By:   /s *Gloria Kui Melwani*
        Gloria Kui Melwani (GM5661)
        1180 Avenue of the Americas, 8th Floor
        New York, NY 10036
        Telephone: (212) 382-4620
        Email: gloria@melwanichan.com

*Attorneys for Plaintiff*

15